UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

KIMBERLY DAWN WATSON,              )
                                  )
     *Plaintiff*,              )
                                  )
v.                                )      No. 1:20-cv-00355-DCLC-SKL
                                  )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
     *Defendant*.              )

## REPORT AND RECOMMENDATION

Plaintiff ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Doc. 15 & Doc. 20] and filed supporting briefs [Doc. 17 & Doc. 21]. For the reasons stated below, I recommend: (1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 13 ("Tr.")], Plaintiff filed her application for DIB and SSI on January 26, 2018, alleging disability beginning November 15, 2016 (Tr. 16). Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The first hearing was held July 5, 2019, and Plaintiff appeared without an attorney. The ALJ continued the hearing for Plaintiff to obtain representation (Tr. 76-88). The second hearing was held November 1, 2019. Plaintiff,

again, did not appear with representation, but the second hearing was continued for further development of the record (Tr. 60-75). The third hearing took place on March 9, 2020, and Plaintiff appeared with current counsel (Tr. 35-59). On March 20, 2020, the ALJ issued his written decision finding Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born April 18, 1977, making her 39 years old on the alleged onset date (Tr. 26), which is considered a "younger individual." *See* 20 C.F.R. §§ 404.1563(c); 416.963(c). She has a limited education. She is able to communicate in English. She has past relevant work as a "housekeeping cleaner," which is considered an unskilled job performed at the light exertional level (Tr. 26).

### B. Medical Records

In her February 2018 Disability Report, Plaintiff alleged disability due to panic disorder, bipolar disorder, depression, and anterolisthesis (Tr. 306). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

No substantive testimony was taken at the July 2019 hearing. Plaintiff did testify about her conditions at the November 2019 hearing, but it was continued for further development of the record. At the final hearing held on March 9, 2020, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of all three hearings.

2

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 30, 2020 (Tr. 18). At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, November 15, 2016 (Tr. 18). At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) chronic kidney disease, (3) obesity, (4) depression, (5) anxiety, (6) panic disorder with agoraphobia, and (7) bipolar disorder (Tr. 18). The ALJ also noted Plaintiff had hypertension, asthma, and gastroesophageal reflux disease, but the ALJ found these impairments were not severe (Tr. 18-19). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

- She can never climb ladders, ropes, or scaffolds.

- She can only occasionally perform all other postural activities.

- She cannot work around unprotected heights or dangerous machinery.

4

- She requires a sit and stand option that allows her to change positions every 45 minutes to one hour.

- She is limited to simple, routine, and repetitive tasks.

- She can have no contact with the general public.

- She is limited to occasional interaction with co-workers and supervisors.

(Tr. 21).

At step four, the ALJ found Plaintiff was not capable of performing her past relevant work as a housekeeping cleaner, as she actually performed it or how the job is generally performed (Tr. 26). At step five, however, the ALJ found there were other jobs available in significant numbers in the national economy for a person with Plaintiff's RFC, including a non-postal mail sorter, a hand packager, and final assembler (Tr. 27). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between alleged onset date of November 15, 2016, and the date of the ALJ's decision, March 20, 2020 (Tr. 28).

## IV.  ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings. She lists the following issues:

1- The Judge made out of court and off the Record observations of the claimant's family that impacted his thinking and decision making.

2- The ALJ did not apply Social Security rules for considering the proof before him and in fact made conclusions that would actually run counter to what those rules would indicate should be done.

3- The vocational expert testimony was not allowed to be fairly developed and the conduct of the ALJ in all three hearings was prejudicial to a fair hearing.

5

4- Substantial evidence supports a favorable credibility finding for the claimant and a disabled decision while there is not substantial evidence for the findings made by the Agency below.

[Doc. 17 at Page ID # 1788]. Because the second and fourth issues both concern the ALJ's assessment of Plaintiff's back condition, the Court will consider these two issues together.

Plaintiff also points out an error with the transcript of the March 2020 hearing. Specifically, the transcript reflects that counsel for Plaintiff asked the following questions, when the questions were actually posed by the ALJ (and answered by the VE):

> ALJ: What research tools did you use to get these numbers, and what – why did you reduce the numbers because – how did you make it 50 percent in one light job, and 75 percent in the other? Can you explain that to us?
>
> VE: Yes, sir. The research tools – the numbers originate from the Census Bureau, the government essentially, and I'm looking at the Occupational Employment Quarterly as well as the SkillTRAN program. There aren't – there's not a lot of information to assist us with the position changes, but the O*NET does describe what percentages of some jobs do allow for sitting and standing, and that is where I got the information for the mail clerk.
>
> As far as the packing, hand packager, that's just based on my professional experience in reviewing files and observing jobs. We certainly see – hand packager positions come across through the Social Security Disability work history forms every day and individuals will indicate how much sitting and standing.
>
> So, it's a greater reduction because I think many more of those jobs would require that than 50 percent, but I mean it may be more than that, it's just an estimate.
>
> ALJ: Okay. Now, the DOT doesn't address standing and sitting, but of course that's also an obsolete publication not recognized for use by [the Department of Labor] who created it. . . . Is that correct?
>
> VE: Yes, sir, that is correct.

(Tr. 53-54).

6

The Commissioner does not dispute Plaintiff's assertion that these questions were posed by the ALJ, not by Plaintiff's counsel. Accordingly, in making the recommendations herein, I have interpreted the transcript with Plaintiff's corrections. I note this issue relates primarily, if not exclusively, to Plaintiff's third listed issue regarding the ALJ's conduct during the administrative hearings.

In addition, as the Commissioner notes, Plaintiff does not challenge the ALJ's assessment of her alleged mental limitations. The Court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived). Accordingly, I find Plaintiff has waived any argument regarding her alleged mental limitations, and this report and recommendation will not address Plaintiff's alleged mental limitations any further.

### A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence

7

"means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

### B. Plaintiff's Family

Plaintiff argues the ALJ erred by considering his own personal observations of Plaintiff's husband and daughter, who both attended the March 2020 hearing. By way of background, at the time of the hearing, Plaintiff's daughter was 25 years old, and she was described as "special needs." (Tr. 47). Plaintiff testified that she (Plaintiff) changes her daughter's diapers, bathes and feeds her

8

daughter, and gets her in and out of the car and the bathtub, with her husband's help (Tr. 47).

However, Plaintiff's daughter can walk, and can put food in her mouth if it is placed in her hand

(Tr. 49).

After Plaintiff's counsel concluded his questioning of Plaintiff, the following exchange

took place between Plaintiff and the ALJ:

> ALJ: I can't not look what I looked at, I'm going to mention it
> because I did observe, while we were out in the waiting room your
> husband and daughter were getting off the elevator and came in and
> your husband was holding her by her hand.
>
> P: Mm-hmm.
>
> ALJ: Okay. Is that something that is required when you're out in
> public, or is that –
>
> P: No, she will come on her own, but sometimes we do.
>
> ALJ: But she never goes anywhere on her own.
>
> P: No, she's –
>
> ALJ: She's always with one of you –
>
> P: Right.
>
> ALJ: – or somebody –
>
> P: Right.
>
> ALJ: – related to you that you trust.
>
> P: Or a member of the family, yes.

(Tr. 50-51).

Plaintiff contends "there is no way to introduce the ALJ's out of court observation of the

claimant's daughter and husband" into the record [Doc. 17 at Page ID # 1789]. Plaintiff further

contends the decision reflects the ALJ's observation impacted his decision to deny Plaintiff

9

benefits [*id.*].  As such, Plaintiff argues the ALJ violated 42 U.S.C. § 405(g), which requires the Commissioner to provide a certified copy of the complete administrative record for judicial review; as well as 20 C.F.R. §§ 404.953[1] and .951,[2] which require the ALJ's decision to be based on evidence in the administrative record.  According to Plaintiff, the fact that the "out of hearing, off the Record observations . . . [were] noted as impactful . . . means that for this Court to properly review the matter means that the same – or a contemporaneous depiction thereof would need to be before the Court." [Doc. 17 at Page ID # 1790].  Because such a contemporaneous depiction is not before the Court, Plaintiff argues "review on this Record is not possible under the law." [*Id.*].

Plaintiff's arguments on this issue are unavailing.  For one, the ALJ's observations actually are contained in the record, as quoted above.  The authorities Plaintiff cites state that the administrative record includes "a verbatim recording of all testimony offered at the hearing."  20 C.F.R. § 404.951(b).  Moreover, Plaintiff's characterization of the significance of the observations is not supported by the record.  Rather, it appears the ALJ put his observations on the record essentially to explain his follow-up questions regarding Plaintiff's daughter.  Plaintiff does not cite to anything in the ALJ's decision showing he gave any improper weight to his observation of

---

[1] Plaintiff cites the following language from subsection (a): "The administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."  20 C.F.R. § 404.953(a).

[2] Plaintiff cites subsection (b): "Contents of the official record. All evidence upon which the administrative law judge relies for the decision must be contained in the record, either directly or by appropriate reference.  The official record will include the applications, written statements, certificates, reports, affidavits, medical records, and other documents that were used in making the decision under review and any additional evidence or written statements that the administrative law judge admits into the record under §§ 404.929 and 404.935.  All exhibits introduced as evidence must be marked for identification and incorporated into the record.  The official record of your claim will contain all of the marked exhibits and a verbatim recording of all testimony offered at the hearing.  It also will include any prior initial determinations or decisions on your claim."  20 C.F.R. § 404.951(b).

10

Plaintiff's husband and daughter. The two paragraphs of the ALJ's decision that Plaintiff cites in her brief on this issue describe Plaintiff's testimony, including her testimony that she "bathes, changes, feeds, and helps her daughter in and out of the car." [Doc. 17 at Page ID # 1790 (citing Tr. 23 & 24)]. Plaintiff does not challenge the ALJ's characterization of this testimony, nor could she, as it is a near-verbatim quote of her testimony at the hearing (Tr. 47).

Accordingly, Plaintiff's motion should be denied as it pertains to the arguments about the ALJ's observation of Plaintiff's husband and daughter.

### C.    Plaintiff's Cancelled Back Surgery and Subjective Complaints

Plaintiff argues the ALJ "did not apply Social Security rules for considering the proof before him and in fact made conclusions that would actually run counter to what those rules would indicate should be done." [Doc. 17 at Page ID # 1790]. Plaintiff is specifically referring to the ALJ's consideration of her back condition and her postponement of recommended back surgery. Plaintiff testified she was scheduled to have the surgery in January 2019, but instead, she began caring for her elderly mother.[3] She explained her doctors told her the recovery process for the surgery would take six months. Her husband was available to provide some care, but Plaintiff testified that it would be "too much for him" to care for their daughter and Plaintiff's mother in addition to providing post-operation care for Plaintiff for six months (Tr. 39).[4] Accordingly, Plaintiff declined to have the surgery in January 2019. Plaintiff's mother died at some point between the November 2019 hearing and the March 2020 hearing, but Plaintiff did not reschedule

_____

[3] Plaintiff's brother had been providing care for Plaintiff's mother, but he passed away in January 2019 (Tr. 73).

[4] Plaintiff testified that her husband does not work because he fell off of a roof and hurt his neck (Tr. 47). According to Plaintiff, he applied for disability benefits, but he was denied and has not reapplied (Tr. 48).

11

the surgery. At the March 2020 hearing, Plaintiff agreed there would never be a good time to have the surgery, but also testified that, if she were awarded benefits, she would "find a way to have this surgery done." (Tr. 40).

Regarding Plaintiff's back, the ALJ found:

> The claimant testified to ongoing, debilitating limitations; however, the totality of the medical evidence does not support the claimant's symptoms as alleged. The record reveals the claimant's diagnosis of lumbar disc disease with foraminal stenosis at L5-S1; however, the claimant's examinations reveal mostly normal findings, including normal gait, no atrophy, normal strength, and normal reflexes. An MRI of the lumbar spine dated June 14, 2017 revealed bilateral L5 pars intra-articular . . . defects resulting in grade 3 spondylolisthesis at L5-S1 level and severe disc degeneration. The claimant was evaluated by Dr. Abrea and was told she needed spinal surgery to "prevent paralysis" (Exhibits 9F, 12F). A CT scan of the lumbar spine dated January 2018 revealed a stable grade 2 anterolisthesis L5 on S1 with severe degenerative disc space narrowing and uncovered disc bulge; chronic bilateral L5 pars defects; moderate to severe bilateral foraminal narrowing at this level; moderate disc bulge at L4-5 (Exhibits 5F, 12F). The claimant was referred to pain management for spondylolisthesis at L5-S1 and foraminal stenosis of the lumbosacral region in June 2017. She reported her back pain increased due to "taking care of disabled child." She was prescribed Norco and sent for a neurosurgical consult. An MRI was ordered in March 2018 to evaluate for potential surgery, but the record does not contain the study. The claimant told her pain management provider that she wanted a second opinion and that her medication improved her symptoms by 65%. A question remained about the medical necessity of the claimant's Xanax prescription (Exhibits 5F, 12F, 20F).
>
> Records from neurosurgeon Dr. Joseph Miller dated August 16, 2018 reveal the claimant "has a significant almost 50% spondylolisthesis with resultant back and leg pain.["] The claimant was "unable to go to an MRI" and had undergone lumbar bracing, pain management, and conservative medical treatment. Dr. Miller noted that the claimant "would greatly benefit from an anterior lumbar interbody fusion followed by dorsal internal fixation." The claimant reported that her back pain kept her from being an effective caretake for her 23-year-old daughter. The claimant was diagnosed with lumbar radiculopathy (Exhibit 17F). . . .

12

I note that the claimant testified that 2 different surgeons recommended she have back surgery. The surgery was scheduled in January 2019, but she was unable to have the surgery because her brother passed away and her mother's health declined. The claimant testified that her surgery would require 6 months of recovery and her husband would have to care for her, her mother, and their child. These factors weigh against a finding of disability.

. . . .

Despite the claimant's allegations, she reported she was taking care of her mother, disabled daughter, and 4 dogs (Exhibit 18F). At the time of the hearing, she testified that she bathes, changes, feeds, and helps her daughter in and out of the car. Her daughter needs help with everything. Her husband is unemployed due to a neck injury. In April 2018, she reported walking her dogs (Exhibit 11F). At [an] April 16, 2019 office visit, the claimant reported that "she has a back problem and her husband is sick, she has a daughter who is special need[s] and it is difficult for her to take care of everybody" (Exhibit 16F). These factors also weigh against a finding of disability.

(Tr. 22, 24).

Plaintiff contends the ALJ failed to consider whether Plaintiff had a good reason for cancelling the surgery, in violation of Social Security Ruling ("SSR") 18-3p, 2018 WL 4945641 (SSA Oct. 2, 2018). Plaintiff argues, "[i]f she did not have a good reason for not proceeding with the back surgery in that window of time it is hard to conceive of who might have had a good reason to delay a surgery." [Doc. 17 at Page ID # 1791].

The Commissioner points out SSR 18-3p only applies when the claimant is "otherwise entitled to disability . . . benefits." 2018 WL 4945641, at *2. Here, as argued by the Commissioner, the ALJ did not find Plaintiff was otherwise entitled to benefits and therefore it was not necessary for the ALJ to perform this analysis required by SSR 18-3p.

13

Plaintiff's reasons for cancelling the surgery are nevertheless relevant. SSR 16-3p provides that when an ALJ assesses a claimant's subjective complaints, the ALJ "will consider" whether "the individual fails to follow prescribed treatment that might help improve symptoms." 2017 WL 5180304, at *9 (SSA Oct. 25, 2017). Before discounting a claimant's subjective complaints based on their failure to follow prescribed treatment, the ALJ must consider "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In this case, the ALJ considered and discussed the timeline of Plaintiff's back surgery and her reasons for cancelling it in detail at the hearing and in the decision, consistent with the requirements of SSR 16-3p.

Plaintiff's circumstances were (and are) undoubtedly profoundly difficult. However, the ALJ did not commit reversible error in finding that Plaintiff's cancellation of her back surgery was inconsistent with her claim of disability. The surgery was scheduled for January 2019, indicating the surgery was feasible at that time. Even if the surgery became unfeasible when Plaintiff became responsible for her mother's care, Plaintiff offers no explanation as to why she did not reschedule the surgery following her mother's death. Moreover, when questioned by the ALJ about whether Plaintiff had pursued help with caring for her daughter (who receives disability benefits), Plaintiff responded that she had not even inquired about it because she and her husband wanted to provide all the care for their daughter because they are her parents (Tr. 49).

Further, it is clear the ALJ also relied on the fact that Plaintiff was able to provide full-time care for her mother and her daughter during her period of alleged disability, not simply the fact that she cancelled the surgery. The record reflects Plaintiff was performing a range of physical tasks for her daughter, including changing her diaper and bathing her (although she did testify her husband helps with bathing) (Tr. 47-48). In her brief, Plaintiff describes her mother as "an elderly

14

parent with rapidly declining health," indicating she likewise required daily care [Doc. 17 at Page ID # 1793]. The ALJ specifically noted an August 2019 office visit when Plaintiff complained it was difficult for her to "take care of everybody" (Tr. 24), evidencing that Plaintiff shouldered responsibility for tending to the needs of her family. It was appropriate for the ALJ to consider these facts and draw reasonable inferences when determining whether Plaintiff's subjective complaints were consistent with the record in this case. *See DePrez v. Berryhill*, No. 3:16-cv-02632, at *20-21 (M.D. Tenn. Sept. 20, 2017) (claimant's ability to care for special needs child appropriate consideration when assessing consistency of the record with claimant's subjective complaints); *see also Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children[.]").

The ALJ also identified other proof in the record that he reasonably found was inconsistent with Plaintiff's subjective complaints. For example, after acknowledging imaging studies showed severe issues with Plaintiff's back, the ALJ observed that Plaintiff's medical exams "reveal mostly normal findings, including normal gait, no atrophy, normal strength, and normal reflexes." (Tr. 22). The ALJ found additional support in the opinions of the state agency medical consultants, although the ALJ found Plaintiff was somewhat more limited by the time he issued his decision (Tr. 24-25). The ALJ also noted Plaintiff reported that her medications provided significant relief (Tr. 22) and that at one point she indicated she was able to walk her dogs (Tr. 24). Finally, the ALJ reasoned that Plaintiff's rather sparse work history "raises some questions as to whether the current unemployment is truly the result of medical problems" (Tr. 24), specifically noting that Plaintiff told providers in 2017 that she "continues to be a stay at home mom for her adult handicapped child." (Tr. 23).

15

A "two-part analysis is applied in evaluating the complaints of symptoms." *Dunlap v. Comm'r of Soc. Sec.*, No. 20-4179, 2021 WL 5371401, at *6 (6th Cir. Sept. 20, 2021) (citing 20 C.F.R. § 404.1529(a)). The ALJ must first "determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 825 (6th Cir. 2019). The ALJ found Plaintiff did in this case. "Next, the ALJ must consider the objective medical evidence and the claimant's reported daily activities, as well as several other factors, to evaluate the intensity, persistence, and functional limitations of the claimant's symptoms." *Id.* At this step, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). For the reasons just listed, each of which are valid considerations in assessing Plaintiff's reported symptoms and complaints, I find substantial evidence supports the ALJ's conclusion at this step of the two-part analysis.

As such, I recommend the Court find the ALJ properly evaluated Plaintiff's reported symptoms and complaints symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p, 2017 WL 5180304 (SSA Oct. 25, 2017), and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted), and Plaintiff has failed to show any harmful error in the ALJ's decision in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

16

### D. The ALJ's Conduct During the Administrative Hearings

Plaintiff contends the ALJ acted inappropriately during each of the three administrative hearings. According to Plaintiff, during the July 2019 hearing, the ALJ made a "highly inappropriate attempt . . . to try to dissuade [Plaintiff] from retaining counsel, specifically the undersigned." [Doc. 17 at Page ID # 1797]. Plaintiff cites the following exchange, which occurred after Plaintiff informed the ALJ that she wanted to continue the hearing because she had spoken to an attorney and she wanted to retain him:

> ALJ: But also, I scheduled you for today and you could have called us ahead of time – wait a minute. You could have called us and told us that but the effect is, when [counsel] gets back and you do this, you're not going to get a hearing right away –
>
> P: I understand that.
>
> ALJ: – because we schedule six months out.
>
> P: Uh-huh.
>
> ALJ: Okay? And I've already scheduled my – sent in my schedule through February of 2020. And guess what? We're not going to give you priority if we're right now scheduled through December. We're working on the December docket. But you won't be on the December docket, nor will you be on the January or February docket. You'll be considered for scheduling at some future date. But we're going to give priority based on the application date of this, of the cases pending and also we take into consideration whether or not it's a dire need case or an age case. Your case may move into age case status, but there's many other cases that are before you. So your decision to get a representative will delay your case – I had a case that I had to reschedule for today where I had a prior hearing [in] February 2019. Okay? But that was a case that I just had to do some supplemental things. But it didn't go back into the queue, okay? But your case will be delayed at least six months probably before you get a hearing. And then I, I don't know when you'll get a decision written.

(Tr. 80-81).  Plaintiff asserts the ALJ's representations about the length of the postponement were "patently untrue," as were other statements the ALJ made (not quoted above) concerning counsel's ability to have other attorneys from his law firm "cover" the hearing for him. [Doc. 17 at Page ID # 1797; *see also* Tr. 85 ("And by the way, he's part of a law firm that represents claimants.  There were other attorneys in that office that could have handled that case.")].

Despite the postponement, Plaintiff did not retain counsel for the second hearing held four months later, in November 2019.  Plaintiff contends that, during the November 2019 hearing, the ALJ used "demeaning" language [*see* Doc. 17 at Page ID # 1798] exemplified in the following exchange:

> ALJ:  Now, people that have depression, anxiety, bipolar, agoraphobia –
>
> P:      Yeah.
>
> ALJ:   – and panic attacks, they tell me the following, and I'm just going to run a number of things by you and you tell me if that's the case.  That –
>
> P:      Okay.
>
> ALJ:   – they tell me that they had problems with attention and concentration.  They can't remain on task.  Is that your problem?
>
> P:      Yes, and my memory is –
>
> ALJ:  And memory, they say that's a –
>
> P:      – horrible.
>
> ALJ:   – big problem.  They tell –
>
> P:      Yeah.
>
> ALJ:   – me that they don't like to go out, period, particularly to crowded places or strange places, like stores and things like that.

18

P: Mm-hmm. Home is my safe spot.

ALJ: Okay. They tell me that prior to getting this, they used to be able to do a lot of things. They used to be able to work and then they could do household chores and they actually had activities that they liked to do maybe with their kids or with their pets or friends and families.

They say that now they can't do anything. Some – they sometimes don't even take care of their personal needs like bathing –

P: Yeah.

ALJ: – and dressing and that they –

P: And I'm ashamed to say, but, yeah.

. . . .

ALJ: Is that your situation?

P: I will say yes to all of that. The anxiety has ruined my life. I have no independence, none.

(Tr. 66-68). The November 2019 hearing was ultimately continued for further development of Plaintiff's claim.

Plaintiff appeared with counsel at the third hearing held in March 2020. Plaintiff claims the ALJ acted inappropriately at the March 2020 hearing by preventing Plaintiff from effectively cross-examining the VE. Specifically, Plaintiff asserts that after referring to the DOT as "obsolete," the ALJ proceeded to stonewall Plaintiff's efforts to question the VE regarding whether the step five jobs the VE identified as available to a person with Plaintiff's RFC "weren't in fact typically combined with other jobs, either of greater physical demand or that otherwise would not comply with every aspect of the hypothetical question." [Doc. 17 at Page ID # 1794]. Plaintiff contends the ALJ observed Plaintiff was "getting somewhere" with this line of questioning, and

19

the ALJ therefore "took over the questioning, misconstrued the questioning, bullied the witness and then told her what her testimony would be on the issue." [*Id.* at Page ID # 1794-95].

Plaintiff contends that the ALJ's statements and conduct during each of the three hearings reveal he was not fair and impartial, which Plaintiff suggests violates her right to due process and her right to have the record fully and fairly developed [Doc. 17 at Page ID # 1798].

The Sixth Circuit has held that in evaluating allegations that an ALJ deprived a claimant of a full and fair hearing due to bias, courts "must begin with the 'presumption that policymakers with decisionmaking power exercise their power with honesty and integrity.'" *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363 (6th Cir. 2004) (quoting *Navistar Int'l Transp. Corp. v. EPA*, 941 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming the presumption of impartiality 'rests on the party making the assertion [of bias],' and the presumption can be overcome only with convincing evidence that 'a risk of actual bias or prejudgment' is present." *Id.* at 364 (alteration in original). "Stated differently, 'any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.'" *Id.* The Sixth Circuit held that even "obvious frustration, emotional mannerisms and abruptness" are insufficient, as is "demeaning and discourteous" conduct toward the claimant and the claimant's counsel. *Id.* (citing *Wells v. Apfel*, 234 F.3d 1271, 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000) (table)); *see also White v. Comm'r of Soc. Sec.*, No. 2:18-cv-12487, 2019 WL 2407994, at *6 (E.D. Mich. Mar. 8, 2019) ("Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994))).

After careful review of the relevant parts of the record and the relevant authorities, I find Plaintiff has failed to identify convincing evidence of a risk of actual bias, prejudgment, or

unfairness requiring intervention by the Court. The ALJ may have been impatient with Plaintiff at the first hearing, but he adequately informed her of her right to a postponement and Plaintiff did, in fact, postpone the hearing. Eventually she also retained counsel. While I find some of the ALJ's comments were unnecessary and, perhaps, even imprudent, the focus of the comments was the delay in hearing Plaintiff's claim on the merits and the resulting inefficiencies for Plaintiff and other claimants participating in an overburdened system, rather than Plaintiff's expressed desire to retain counsel.

At the second hearing, the ALJ used a form of leading question that Plaintiff's counsel does not favor, but it was not demeaning or unfair to Plaintiff. Moreover, Plaintiff agreed that all of the symptoms the ALJ described in his questions applied to her (Tr. 68). In addition, a review of the entire transcript of the second hearing shows the ALJ also asked a number of more open-ended questions. Plaintiff does not point to any evidence or statements in the record suggesting Plaintiff was hindered in her ability to respond or that the ALJ had prejudged Plaintiff. Indeed, the ALJ once again continued the hearing to ensure Plaintiff's medical record was updated and complete.

As for the third hearing, the ALJ's comment about the DOT being "obsolete" was made in the context of discussing the sit/stand option included in Plaintiff's RFC (Tr. 53-54). Plaintiff does not dispute that the DOT does not address positional changes like a sit/stand option. Moreover, the notion that some occupations listed in the DOT are outdated or obsolete is not controversial. *See Cunningham v. Astrue*, 360 F. App'x 606, 614-616 (6th Cir. 2010) ("While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."). In this case, however, the VE testified that she did not rely solely on the DOT when identifying

21

occupations available to Plaintiff. She also consulted the United States Census Bureau, the Occupational Employment Quarterly, SkillTRAN, and the Occupational Information Network, or O*NET (Tr. 54). O*NET is a "database that is continually updated based on data collection efforts that began in 2001." *Cunningham*, 360 F. App'x at 616. For the hand packager occupation, she also relied on her "professional experience in reviewing files and observing jobs." (Tr. 54).

Plaintiff does not even argue the hand packager and mail clerk occupations identified by the VE are obsolete. Instead, as mentioned above, she argues the ALJ impeded her ability to effectively cross-examine the VE. Again, the transcript of the hearing belies Plaintiff's argument. As the Commissioner puts it, Plaintiff's counsel asked the VE "a series of general questions about the changing nature of the national workforce," and the ALJ "interjected to direct the questioning back to issues of this case," namely whether a person with Plaintiff's RFC could meet the requirements of the identified occupations [Doc. 21 at Page ID # 1814]. The ALJ then confirmed that the VE considered "the current nature of the workplace in providing the occupations and job numbers in her response to the hypothetical question." [*Id.*]. Plaintiff did not attempt to cross-examine the VE about the non-DOT sources she relied on, and she does not cite to any relevant authority or information in the record of this case showing that the identified occupations are obsolete. Plaintiff has not shown the ALJ improperly limited the scope of the hearing in such a way as to cause prejudice to Plaintiff or to reflect bias against Plaintiff or her counsel. Instead, the ALJ elicited testimony from the VE using a hypothetical, and the VE's testimony provides substantial support for the ALJ's step five determination that there are occupations available in the national economy to a person with Plaintiff's RFC.

Plaintiff's citation to *Ventura v. Shalala*, 55 F.3d 900, 904-05 (3rd Cir. 1995) is unavailing. In that case, the ALJ made comments to the claimant's representative like, "Tell you what, if I

throw him out, he has nothing. How does that grab you? I want to see what the VA Center says. . . . It's only going to help him. It's not going to hurt him. What's the matter with you?" and "you're not doing one damn thing to help him. So why don't you sit back and listen for a second." *Id.* at 903-05. The ALJ also "hastily concluded that claimant's back pain was caused by a mental impairment" and refused to consider information from the claimant's treating physician regarding physical causes for the claimant's pain. *Id.* at 903. The court emphasized the ALJ failed to "consider seriously the findings of a treating physician." *Id.* at 904. In this case, the ALJ did not use such inflammatory language and, furthermore, the ALJ actually continued the hearing to make sure the record was updated, accurate, and complete before considering Plaintiff's claim on the merits.

Finally, Plaintiff briefly mentions the ALJ's comments about his personal observations of Plaintiff's family members in this section of her brief. That topic is adequately addressed above.

## V.     CONCLUSION

For the foregoing reasons, I find the ALJ's decision complies with relevant legal standards and is supported by substantial evidence. Plaintiff has not shown any harmful error with the ALJ's decision, nor has she shown that her due process rights were violated or that the ALJ was impartial or unfair. As such, the ALJ's decision should be upheld, despite the presence of conflicting evidence in the record, including evidence that supports Plaintiff's claim of disability. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The Commissioner's decision must be affirmed if substantial evidence supports it, even if substantial evidence would support an opposite conclusion." (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Accordingly, I **RECOMMEND**:[5]

      (1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**;

      (2) the Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**; and

      (3) the Commissioner's decision denying benefits be **AFFIRMED**.

ENTER:

s/ *Susan K. Lee*
_____

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

24